## BURNS v. BYRNE ET AL.

1. **Trust**: EVIDENCE. To establish a resulting trust in real estate, the evidence must be clear and satisfactory..

2. **Tenant in Common**: ADVERSE POSSESSION: STATUTE OF LIMITATIONS. The seizin and possession of one tenant in common are the seizin and possession of the others, and the statute of limitations will not operate in favor of the former to give him title by adverse possession unless it be sole and exclusive, with the knowledge and acquiescence of his co-tenants.

3. ———: ———: TAX SALE. The husband of a tenant in common cannot acquire a valid title to the common property by purchase of the same at tax sale.

*Appeal from Dubuque District Court.*

FRIDAY, DECEMBER 15.

THIS action was commenced October 21, 1872. The plaintiff's petition alleged that about the month of January, 1858, Patrick Pendergast departed this life, intestate, without issue, leaving surviving him his widow, Bridget Pendergast, and the plaintiff, his sister, and sole surviving heir; that at the time of his death he owned the north-east quarter and the north-west quarter of the south-east quarter of section one, township eighty-nine, range one west; that plaintiff resided in the State of New Jersey and never received any information of the death of her brother until a short time before the commencement of the suit, and that the defendant, Bridget Byrne, formerly Bridget Pendergast, concealed from her the death of her brother for the purpose of defrauding her of her interest in said estate; that the defendant, Bridget, conspired and agreed with the defendant, William Byrne, her husband, to cheat and defraud plaintiff by procuring a part of said premises, to-wit: the south half of the north-east quarter and the north-west quarter of the south-east quarter, to become delinquent for taxes, and to be sold therefor on the 8th day of September, 1867, to one Absalom Cain, and thereafter procured an assignment of the certificate of purchase to Wil-

liam Byrne, her husband, to whom a treasurer's deed for said premises was executed on the 16th day of November, 1870. The plaintiff prays that one-half of said estate may be set apart to her, and for general relief.

The defendants, for answer, deny the allegations of the petition, and allege that the defendant, Bridget Byrne, formerly Bridget Pendergast, at the time of the death of said Patrick was the owner in fee simple of the following portion of said premises, to-wit: the north fractional half of the north-east quarter of said section; that the remainder of the premises described, the south-west quarter of the north-east quarter, the south-east quarter of the north-east quarter, and the north-west quarter of the south-east quarter of said section, were entered by Patrick Pendergast with money belonging to the defendant, Bridget, and were by him held in trust for her at the time of his death; that for more than ten years defendants have been in open adverse possession, under claim of title and color of right, and the action is barred by the statute of limitations; that the defendant, William Byrne, is owner in fee simple of the last above described portion of said premises by virtue of a deed from the county treasurer of Dubuque county. The cause was tried by the court, and a decree was entered entitling plaintiff to one-half of the property shown to have been entered in the name of Patrick Pendergast.

Defendants appeal.

*H. B. Foulke*, for appellants.

*E. McCeney* and *Fred. O'Donnell*, for appellee.

DAY, J.— I. At the trial it was proved that the north fractional half of the north-east quarter referred to in plaintiff's petition was entered by the defendant, Bridget, before her marriage to Patrick Pendergast, and that a patent isued to her therefor December 1st, 1875. The court found against the plaintiff as to this portion of the property, and as to it no question is here made.

1. TRUST: evidence.

The defendant, Bridget, claims that the remainder of the property in controversy was entered by Patrick Pendergast

with her money, and that, at the time of his death, he held it simply in trust for her. Each member of the court has carefully examined the testimony upon this point, and we unite in the conclusion that the evidence falls very far short of the clear and satisfactory proof necessary to establish a resulting trust in real estate.

II. The defendants claim that plaintiff's action is barred by the statute of limitations. Patrick Pendergast died in 1858, without issue, intestate, and seized of the real estate now in controversy. Upon his death the defendant, Bridget, his widow, and the plaintiff, his sister, became seized of the premises as tenants in common. The seizin and possession of one tenant in common are the seizin and possession of the other. One can never be disseized by another without an *actual ouster*. By *actual ouster* is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits. An actual ouster and consequent adverse possession might be inferred from sole possession and an exclusive reception and enjoyment of the rents and profits, with the knowledge and implied acquiescence of the other tenant in common, for the period of ten years. In this case the proof is simply that the defendants continued in possession of the premises from the time of the death of Patrick Pendergast to the time that this suit was commenced, a period of about fourteen years. The plaintiff did not know of the death of her brother until 1871. There can, therefore, be no presumption of any implied assent to the reception and appropriation of the profits by the defendants. We think, under the facts of this case, the plaintiff is not barred by the statute of limitations. In *Campbell v. Campbell*, 13 N. H., 488, "the owner of a farm died in 1778. One of his sons, then seventeen, carried on the farm, living there with the co-heirs until 1793, when the other heirs went away, and, his sisters having married, he continued in possession and management of the farm till his death in 1822, without, however, so far as appears, ever having made a claim

*Margin note: 2. TENANT in common: adverse possession: statute of limitations.*

of title to the whole farm. It was held that he acquired no title by adverse possession." See citation of this case in Angell on Limitations, fifth edition, p. 435, n. 5. That is a much stronger case in favor of the statute than the one at bar, for, in that case, the co-heirs had knowledge of their rights. "It has been held that if a widow remains in possession of land after her husband's death, and marries again, and she and her husband continue in possession for more than the time limited for the right of entry, neither he nor she can set up the statute against an ejectment by the children of the first husband." See Angell on Limitations, p. 379, and authorities cited.

III. The defendant, William Byrne, offered in evidence a treasurer's deed to himself for all the land entered by Patrick

**3. ——: ——: tax sale.** Pendergast, and now in controversy, dated Nov. 16, 1870, and reciting that the land was sold on the 3d day of September, 1867, for the delinquent taxes of 1865, to A. Cain, who assigned his certificate of purchase to William Byrne on the 17th of February, 1868.

The plaintiff objected to the introduction of this deed, and the objection was sustained. Of this action the defendants complain. The proof shows that William Byrne married the defendant, Bridget, within one year after the death of Patrick Pendergast; that he came to live with her on the place, and that he has been living there ever since.

The defendant, Bridget, being a tenant in common with plaintiff, could not acquire a valid tax title upon the property. *Austin v. Barrett*, 44 Iowa, 488.

It is claimed, however, that the defendant, William, can acquire a valid tax title against both the plaintiff and his wife, Bridget. We think this claim cannot be admitted. He was in possession of the property with his wife, and, so far as appears, was in enjoyment of the profits. It was his duty to see that the profits were applied to the payment of the taxes assessed. It would be a startling doctrine that a husband may possess and enjoy the profits of his wife's real estate, neglect to pay the taxes, purchase the property at the sale for the delinquency, and acquire a valid title. Such a

refusal or neglect to pay taxes would be a fraud upon his wife, and would vitiate the title acquired. And it would be equally a fraud upon a tenant in common with the wife, for as to her he would be under the same obligation to see that the taxes are paid out of the profits of the land. The assignment of the certificate of purchase to Byrne placed him in the same position he would have occupied if he had himself bid in the land at the tax sale. In legal effect it operated as a redemption of the land from the tax sale, or a payment of the taxes. The case of *Fair v. Brown*, 40 Iowa, 209, bears some analogy to this case. There was no error, to the prejudice of appellants, in rejecting this deed, since if it had been admitted the decree must have been the same.

AFFIRMED.